IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | § |
| Plaintiff, | § |
| | § Criminal No. 2:18-CR-128-D |
| VS. | § |
| ESMERVI CARONE RODRIGUEZ, | § |
| Defendant. | § |

MEMORANDUM OPINION
AND ORDER

Defendant Esmervi Carone Rodriguez ("Rodriguez") moves to suppress and preclude the government from introducing as evidence at trial all evidence (including statements and alleged contraband) obtained following a traffic stop. After an evidentiary hearing, and for the reasons that follow,[1] the court denies the motion.

I

On October 3, 2018 Texas Department of Public Safety ("DPS") Corporal Darrin Bridges ("Corporal Bridges") was patrolling on Interstate Highway 40 ("I-40") in Carson County, Texas. Corporal Bridges has been employed as a law enforcement officer for 23 years. He served for three years as an officer in the city of Borger, Texas and has served for 20 years as a Texas State Trooper. At the time of the traffic stop in question, Corporal Bridges was enforcing traffic laws and performing drug interdiction.

---

[1]Pursuant to Fed. R. Crim. P. 12(d), the court sets forth in this memorandum opinion and order its essential findings.

While traveling westbound on I-40 and observing traffic, Corporal Bridges observed a white SUV ("SUV") traveling eastbound behind a passenger vehicle. Using his radar detector, Corporal Bridges determined that both vehicles were traveling at approximately 75 miles per hour, and he estimated that the SUV was traveling approximately two seconds behind the other passenger vehicle.[2] Corporal Bridges estimated that the distance between the two vehicles was approximately 180 to 200 feet.

Corporal Bridges turned his vehicle around and drove eastbound in order to catch up with, and pull over, the SUV for the traffic offense of following too closely. As he approached the SUV from behind, Corporal Bridges observed that the vehicle was still closely following the passenger car in front of it. At the hearing, Corporal Bridges testified that he estimated that the SUV was now 120 feet behind the other passenger car and still appeared to be traveling at approximately 75 miles per hour. Based on his extensive experience, Corporal Bridges testified that the distance between the two vehicles can be calculated by assessing ten feet for each white stripe on the road and 30 feet to each distance or "gap" between each stripe. In Corporal Bridges' estimation there were three gaps (90 feet) and three stripes (30 feet) between the SUV and the other vehicle. According to Corporal Bridges and the 2017 Texas Driver Handbook, at the speed of 70 miles per hour, the SUV should have been approximately 387 feet behind the other passenger car. In Corporal Bridges' estimation, traveling at 120 feet behind the passenger vehicle, the SUV could not

---

[2]Rodriguez concedes in his brief that he was traveling two seconds behind the other vehicle.

have stopped and avoided a collision had there been some sort of catastrophic event, a blowout, or a sudden stop.

While the SUV was traveling in the right lane, Corporal Bridges attempted to pull up next to it in order to ascertain whether the driver of the vehicle was committing any other traffic violations, such as a seatbelt violation. At this point, the SUV was approximately 120 to 130 feet behind the passenger car in front of it, still traveling between 70 and 75 miles per hour, and was advancing on the vehicle in front of it when the driver (Rodriguez) applied the vehicle's brakes.

Corporal Bridges pulled his vehicle behind the SUV and activated his emergency equipment. The SUV pulled to the side of the road and came to a complete stop. During the traffic stop, Corporal Bridges identified Rodriguez as the driver and the registered owner of the SUV. Corporal Bridges ultimately issued Rodriguez a warning for following the other passenger car too closely, in violation of Tex. Transp. Code Ann. § 545.062(a) (West 2011 & Supp. 2018).

During the traffic stop, Corporal Bridges asked for consent to search the vehicle, and Rodriguez consented.[3] A search was conducted, and it led to the discovery of 30 bundles of suspected methamphetamine, which weighed approximately 36 pounds (16,329.3 grams). Rodriguez was read his *Miranda* warnings, and he voluntarily consented to an interview. During the interview, Rodriguez made incriminating statements.

---

[3]Rodriguez neither challenged his consent in his motion to suppress, nor did he challenge consent at the evidentiary hearing.

Rodriguez was charged in a two-count indictment with the offenses of conspiracy to distribute and possess with intent to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. § 846, and possession with intent to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(viii). Rodriguez moves to suppress all evidence, including statements and alleged contraband, seized during the search of the vehicle. The government opposes the motion.

II

The Fourth Amendment protects individuals against unreasonable searches and seizures. "The stopping of a vehicle and detention of its occupants constitutes a 'seizure' under the Fourth Amendment." *United States v. Brigham*, 382 F.3d 500, 506 (5th Cir. 2004) (en banc). Evidence derived from an unreasonable search or seizure generally must be suppressed under the "fruit-of-the-poisonous-tree doctrine." *United States v. Alvarado-Zarza*, 782 F.3d 246, 249 (5th Cir. 2015) (citing *United States v. Cotton*, 722 F.3d 271, 278 (5th Cir. 2013)). "Warrantless seizures are 'per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions.'" *Id.* (quoting *United States v. Hill*, 752 F.3d 1029, 1033 (5th Cir. 2014)). One such exception comes from *Terry v. Ohio*, 392 U.S. 1 (1968).

The framework articulated in *Terry* is used to analyze the legality of a traffic stop. "Under the two-part *Terry* reasonable suspicion inquiry, [the court asks] whether the officer's action was: (1) 'justified at its inception'; and (2) 'reasonably related in scope to the circumstances which justified the interference in the first place.'" *United States v.*

*Lopez-Moreno*, 420 F.3d 420, 430 (5th Cir. 2005) (quoting *Terry*, 392 U.S. at 19-20). "A temporary, warrantless detention of an individual constitutes a seizure for Fourth Amendment purposes and must be justified by reasonable suspicion that criminal activity has taken or is currently taking place; otherwise, evidence obtained through such a detention may be excluded." *United States v. Garza*, 727 F.3d 436, 440 (5th Cir. 2013). "Reasonable suspicion requires more than merely an unparticularized hunch, but considerably less than proof of wrongdoing by a preponderance of the evidence." *Id.* (internal quotation marks and citation omitted). As this court has previously explained:

> For a traffic stop to be justified at its inception, an officer must have an objectively reasonable suspicion that some sort of illegal activity, such as a traffic violation, occurred, or is about to occur, before stopping the vehicle. The Supreme Court has stated that in making a reasonable suspicion inquiry, a court must look at the totality of the circumstances of each case to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing. We have stated previously that reasonable suspicion exists when the officer can point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant the search and seizure. In evaluating the totality of the circumstances, a court may not consider the relevant factors in isolation from each other. In scrutinizing the officer's basis for suspecting wrongdoing, it is clear that the officer's mere hunch will not suffice. It is also clear, however, that reasonable suspicion need not rise to the level of probable cause.

*United States v. Johnson*, 2006 WL 1041148, at *3 (N.D. Tex. Apr. 20, 2006) (Fitzwater, J.) (quoting *Lopez-Moreno*, 420 F.3d at 430).

Although "[a] defendant normally bears the burden of proving by a preponderance of the evidence that the challenged search or seizure was unconstitutional[,] . . . where a police

officer acts without a warrant, the government bears the burden of proving that the search was valid." *United States v. Waldrop*, 404 F.3d 365, 368 (5th Cir. 2005) (citations omitted). Accordingly, "[t]he government bears the burden of establishing by a preponderance of the evidence [the] two elements under *Terry*[.]" *Johnson*, 2006 WL 1041148, at *3 (citing *United States v. Sanchez-Pena*, 336 F.3d 431, 437 (5th Cir. 2003); *United States v. Riley*, 968 F.2d 422, 424-25 (5th Cir. 1992)).

III

Rodriguez maintains that he did not commit any traffic violation that justified the initial stop.[4] The government contends that Corporal Bridges stopped Rodriguez for following too closely, in violation of Tex. Transp. Code Ann. § 545.062(a). Section 545.062(a) provides:

> [a]n operator shall, if following another vehicle, maintain an assured clear distance between the two vehicles so that, considering the speed of the vehicles, traffic, and the conditions of the highway, the operator can safely stop without colliding with the preceding vehicle or veering into another vehicle, object, or person on or near the highway.

Tex. Transp. Code Ann. § 545.062.

The court finds that, when Corporal Bridges stopped Rodriguez's vehicle, he had an objectively reasonable suspicion, "considering the speed of the vehicles, traffic, and the conditions of the highway,"—and, in particular, the distance between Rodriguez's SUV and

---

[4]Rodriguez does not challenge, under the second prong of *Terry*, whether the traffic stop was "reasonably related in scope to the circumstances which justified the interference in the first place." *Terry*, 392 U.S. at 19-20.

the passenger vehicle—that Rodriguez's vehicle could not "safely stop without colliding with the [passenger vehicle.]" *Id.*

Corporal Bridges credibly testified that, at the time he effected the traffic stop, he estimated that Rodriguez was following approximately 120 to 130 feet behind the passenger vehicle. He also testified, based on the rule described in the Texas Driver Handbook, that traveling at approximately 70 miles per hour, Rodriguez should have allowed approximately 387 feet between his SUV and the passenger vehicle. Corporal Bridges concluded that Rodriguez would have collided with the passenger vehicle had it stopped suddenly. The Fifth Circuit has upheld traffic stops by law enforcement based on similar circumstances. *See, e.g., United States v. Wallstrum*, 515 Fed. Appx. 343, 349-50 (5th Cir. 2013) (per curiam) (affirming district court holding that vehicle traveling 70 miles per hour at about 60 to 90 feet behind other vehicle gave officer reasonable suspicion to effect traffic stop); *see also United States v. Roberts*, 2018 WL 1740076, at*5-6 (N.D. Tex. Apr. 11, 2018) (Fitzwater, J.) (holding that vehicle traveling at 72 miles per hour at approximately 100 feet behind semi gave officer reasonable suspicion to effect traffic stop).

Rodriguez maintains that, because there were no barriers on the roadway, there was no construction, light traffic, and clear conditions on the roadway, and because he maintained enough distance from the car in front of him that approximately two seconds elapsed between when that vehicle passed a fixed point and when his SUV passed that point, he would have been able to stop without colliding with the vehicle in front of him or veering into any other obstruction; there was no traffic violation; and, therefore, there was no objectively reasonable

basis for Corporal Bridges to stop his vehicle. The court rejects this argument. "Section 545.062(a) contains no objective time element; it requires only that drivers maintain 'an assured clear distance' with other vehicles, based on a number of variables." *United States v. Gonzalez*, 658 Fed. Appx. 748, 750 (5th Cir. 2016) (per curiam) (citing *Brigham*, 382 F.3d at 506). Rodriguez offers no authority for the proposition that his alleged compliance with the "two-second" rule shows that Corporal Bridges' judgment that Rodriguez was following too closely was objectively unreasonable in the light of all the circumstances.

At the hearing on his suppression motion, Rodriguez pointed to the "Special Note" in the 2017 version of the Texas Driver Handbook that details "[w]hen the vehicle ahead of you passes a fixed object and you reach the same fixed object in less than two seconds, you are following too closely." Rodriguez also cited the 2012 version of the Texas Driver's Handbook, which states "[a] good rule is to stay at least two seconds behind the vehicle ahead of you if you are an experienced driver." But neither of these statements constitutes authority that compliance with the "two-second" rule shows that Corporal Bridges' conduct in this case was objectively unreasonable. Even if the statements in the driver handbooks *did* constitute authority to support Rodriguez's proposition, evidence elicited at the hearing contradicts his averment that he complied with the "two-second" rule. Corporal Bridges testified that Rodriguez was approximately 120 feet behind the car in front of him, traveling at approximately 75 miles per hour, which is a distance of fewer than two seconds behind.

A witness called by Rodriguez—Roen Serna ("Serna")[5]—agreed that, at one point in the video, Rodriguez was "just over one second" behind the vehicle in front of him.

Serna also testified—consistent with Rodriguez's argument—that, in his opinion, given the conditions of the weather, the conditions of the roadway, and the speeds of both vehicles, Rodriguez was maintaining an "assured clear distance" and "certainly not tailgating." Although Serna expressed a view that differed from Corporal Bridges' conclusion, his observations are confined to the video recordings, and his opinion is in part contradicted by his own testimony about the distance between Rodriguez's vehicle and the one in front of him. Serna's testimony thus does not undercut the credible, specific, articulable facts provided by Corporal Bridges of his objectively reasonable suspicion that Rodriguez had committed a violation of § 545.062(a).

Accordingly, the court concludes that, at the time Corporal Bridges stopped Rodriguez's vehicle, he had an objectively reasonable suspicion that Rodriguez had committed a violation of Tex. Transp. Code Ann. § 545.062(a) by following too closely.

IV

During closing argument, Rodriguez's counsel presented for the first time the contention that Tex. Transp. Code Ann. § 545.062(a) is unconstitutionally vague and violates Rodriguez's Fifth Amendment due process rights.

Because this argument was neither briefed in Rodriguez's motion to suppress nor

---

[5]Serna is an investigator for the Federal Public Defender's office and has 25 years of experience as a police officer involved in patrol and accident investigation duties.

raised prior to summation, the court is not obligated to consider it. *See United States v. Salazar*, 2017 WL 3704345, at *1 (N.D. Tex. Aug. 28, 2017) (Fitzwater, J.) (declining to reconsider a decision on a motion to suppress based on an argument raised for the first time during closing argument); *see also United States v. Dunn*, 142 Fed. Appx. 822, 823 (5th Cir. 2005) (per curiam) (holding that defendant waived argument that seizure exceeded scope of warrant when he did not raise the issue in his pretrial motion to suppress, "and explicitly limited his motion to an attack on the sufficiency of the affidavits at his suppression hearing."); *N.C. All. for Transp. Reform, Inc. v. U.S. Dep't of Treasury*, 713 F.Supp.2d 491, 510 (M.D.N.C. 2010) ("Raising . . . new arguments for the first time at oral argument undermines the purpose of orderly briefing and risks subjecting an opponent to an unfair disadvantage."). Nevertheless, the court notes that this issue is not one of first impression in the Fifth Circuit or in Texas state court. In fact, 25 years ago the Fifth Circuit determined that § 545.062(a)'s predecessor—containing identical "assured clear distance" language—was not unconstitutionally vague. *See United States v. Inocencio*, 40 F.3d 716, 728 (5th Cir. 1994) (addressing Tex. Rev. Civ. Stat. Ann. art. 6701d, § 61(a) (Vernon 1977)). A Texas court of appeals has similarly determined that the current version of § 545.062(a) is not unconstitutionally vague. *Stoker v. State*, 170 S.W.3d 807, 812 (Tex. App. 2005, no pet.) (citing *Inocencio*, 40 F.3d at 728; *Ford v. State*, 158 S.W.3d 488, 494 (Tex. Crim. App. 2005)).

Furthermore, as the Fifth Circuit explained in *Inocencio*, and as is true today, "even if the statute were declared unconstitutional, it would not affect the legality of the stop since

raised prior to summation, the court is not obligated to consider it. *See United States v. Salazar*, 2017 WL 3704345, at *1 (N.D. Tex. Aug. 28, 2017) (Fitzwater, J.) (declining to reconsider a decision on a motion to suppress based on an argument raised for the first time during closing argument); *see also United States v. Dunn*, 142 Fed. Appx. 822, 823 (5th Cir. 2005) (per curiam) (holding that defendant waived argument that seizure exceeded scope of warrant when he did not raise the issue in his pretrial motion to suppress, "and explicitly limited his motion to an attack on the sufficiency of the affidavits at his suppression hearing."); *N.C. All. for Transp. Reform, Inc. v. U.S. Dep't of Treasury*, 713 F.Supp.2d 491, 510 (M.D.N.C. 2010) ("Raising . . . new arguments for the first time at oral argument undermines the purpose of orderly briefing and risks subjecting an opponent to an unfair disadvantage."). Nevertheless, the court notes that this issue is not one of first impression in the Fifth Circuit or in Texas state court. In fact, 25 years ago the Fifth Circuit determined that § 545.062(a)'s predecessor—containing identical "assured clear distance" language—was not unconstitutionally vague. *See United States v. Inocencio*, 40 F.3d 716, 728 (5th Cir. 1994) (addressing Tex. Rev. Civ. Stat. Ann. art. 6701d, § 61(a) (Vernon 1977)). A Texas court of appeals has similarly determined that the current version of § 545.062(a) is not unconstitutionally vague. *Stoker v. State*, 170 S.W.3d 807, 812 (Tex. App. 2005, no pet.) (citing *Inocencio*, 40 F.3d at 728; *Ford v. State*, 158 S.W.3d 488, 494 (Tex. Crim. App. 2005)).

Furthermore, as the Fifth Circuit explained in *Inocencio*, and as is true today, "even if the statute were declared unconstitutional, it would not affect the legality of the stop since

[the officer] had probable cause to believe [defendant] violated the 'presumptively valid' statute." *Inocencio*, 40 F.3d at 728 (citing *Michigan v. DeFillippo*, 443 U.S. 31, 37-40 (1979)). Thus even if a question regarding § 545.062(a)'s constitutionality were properly before the court, the answer would not alter the disposition of Rodriguez's motion to suppress.

\* \* \*

Accordingly, for the reasons explained, Rodriguez's motion to suppress is denied.

**SO ORDERED**.

May 15, 2019

_____
SIDNEY A. FITZWATER
SENIOR JUDGE